<u>NOT YET SCHEDULED FOR ORAL ARGUMENT</u>

**Case No. 18-1051(L)**

**Consolidated Cases: 18-1052, 18-1053, 18-1054, 18-1055, 18-1056, 18-1061, 18-1062, 18-1064, 18-1065, 18-1066, 18-1067, 18-1068, 18-1088, 18-1089, 18-1105**

# United States Court of Appeals
# for the District of Columbia Circuit

MOZILLA CORPORATION, et al.

*Petitioners,*

v.

FEDERAL COMMUNICATIONS COMMISSION
and UNITED STATES OF AMERICA,

*Respondents.*

On Petition for Review of an Order
of the Federal Communications Commission

**BRIEF OF INTERVENOR DIGITAL JUSTICE FOUNDATION
IN SUPPORT OF NEITHER PARTY**

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the Digital Justice Foundation certifies as follows:

**(A) Parties and Amici.**

The Brief of Government Petitioner and the Brief of Non-Government Petitioners list all petitioners, respondents, and intervenors appearing before this Court. Both briefs also list a sample of the companies and organizations that filed comments to the FCC regarding the FCC's Order under review.

Since those briefs were submitted, the following amici have filed notice of their intent to submit a brief amicus curiae:

> Jon Peha,
> Scott Jordan,
> certain Professors of Communications Law,
> the Electronic Frontier Foundation,
> the City of New York,
> Engine Advocacy,
> Twilio, Inc,
> Consumers Union,
> certain Members of Congress,
> the National Association of State Utility Consumer Advocates,
> the National Association of Regulatory Utility Commissioners, and
> eBay, Inc.
> American Council on Education
> certain Education and Library Associations
> and
> certain Professors of Administrative, Communications, Antitrust, and
> Contract Law and Policy

//
//

DIGITAL JUSTICE FOUNDATION
010001000100101001001100100010001001010010010011001000100010010010010001000110

**(B) Rulings Under Review.**

The ruling under review is the FCC's <u>Restoring Internet Freedom</u>,

Declaratory Ruling, Report and Order, and Order, 33 FCC Rcd. 311 (2018) (the

"Order").

**(C) Related Cases.**

The Order has not previously been the subject of a petition for review before

this Court or any other court. All petitioners for review of this Order have been

consolidated before this Court.

DIGITAL JUSTICE FOUNDATION
010001000100010001000110010001000100101010001001100100010001001010010001000110

## <u>CORPORATE DISCLOSURE STATEMENT</u>

The Digital Justice Foundation ("DJF") is a 501(c)(3)-registered, non-profit corporation with a mission to advocate for and educate about issues of digital justice. The Digital Justice Foundation, Inc., promotes and protects individual rights in the digital space with a particular focus on being a voice for underrepresented users, artists, creators and innovators.

The DJF has no parent corporation and no publicly held corporation has any ownership stake in it. The DJF issues no shares and no publicly held corporation pays 10% of more of its dues or exercises 10% or more of its voting power.

The DJF has accepted no donations and has received no cy-pres awards from any petitioners, respondents, or other intervenors in this case. Nor have any of its lawyers been funded by or received grants from any petitioner, respondent, or other intervenor.

DIGITAL JUSTICE FOUNDATION

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ............................... i

Corporate Disclosure Statement ................................................................ iii

Table of Contents ....................................................................................... iv

Table of Authorities ...................................................................................v

Statutes and Regulations ........................................................................... vi

Issues Presented ........................................................................................ vii

Standard of Review.................................................................................... viii

Summary of Argument .............................................................................. ix

Standing......................................................................................................x

Argument.....................................................................................................1

POINT 1 – The Commission Retains Authority for a Transparency Rule Under Section 257 Despite the Repeal of Section 257(c). ...................................1

    A.    Section 257(c)'s repeal had no effect on the FCC's authority to promulgate a transparency rule under Section 257.............................1

    B.    The Order sufficiently relies upon Section 257(a) alone to justify a transparency rule. ...................................................................................2

POINT 2 – Nonetheless, the Commission's Repeal of Preexisting Transparency Requirements Was Arbitrary and Capricious........................................6

    A.    The FCC failed to focus on entrepreneurs and small businesses as required by Section 257(a). ...................................................................6

    B.    The FCC's discussion of consumers contradicts its discussion elsewhere in the Order of how transparency benefits consumers......................8

    C.    The FCC mischaracterized its pared-down transparency as a near-return to the 2010 transparency rule. ......................................................10

    D.    The FCC never explained why the existing transparency provisions were overburdensome or how remaining transparency provisions were sufficient to facilitate consumer-protection and antitrust lawsuits. ...................12

Conclusion ................................................................................................13

Certificate of Compliance with Type-Volume Limitations....................14

Certificate of Service ...............................................................................15

DIGITAL JUSTICE FOUNDATION
010001100010010010001100100010001010010001100100010001000100

# <u>TABLE OF AUTHORITIES</u>

## Cases

<u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402 (1971). ....................... 6

<u>Comcast Corp. v. FCC</u>, 600 F.3d 642 (D.C. Cir. 2010). ............................................. 1

<u>ExxonMobil Oil Corp. v. FERC</u>, 487 F.3d 945 (D.C. Cir. 2010)................................. 6

<u>FCC v. Fox TV Stations, Inc.</u>, 556 U.S. 502 (2009).................................................. 11

<u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29 (1983)..................... 6

<u>Whitman v. Am. Trucking Ass'ns</u>, 531 U.S. 457 (2001). ........................................... 2

## Statutes

47 U.S.C. § 257.............................................................................................. 3, 4, 7

47 U.S.C. 257(c) (2017), *repealed 2018*..................................................................... 3

RAY BAUM'S Act of 2018, Pub. L. 115-141, 132 Stat. 1089 (2018)....................................... 1, 2

## Other Authorities

<u>In re Section 257 Triennial Report to Congress</u>, 31 FCC Rcd. 12037 (2016). ............................. 5

## Regulations

<u>In re Preserving the Open Internet</u> (2010 Order), 25 FCC Rcd. 17905. ........................... 1, 10, 11

<u>In re Protecting and Promoting the Open Internet</u>, 30 FCC Rcd. 5601. ........................................ 1

<u>Restoring Internet Freedom</u>, Declaratory Ruling, Report and Order, and Order, 33 FCC Rcd. 311 (2018). ................................................................................. 4, 5, 7, 8, 9, 10, 11, 12

DIGITAL JUSTICE FOUNDATION

## <u>STATUTES AND REGULATIONS</u>

- Before its repeal, 47 U.S.C. § 257(c) (2017) read:

(c) Periodic review. Every 3 years following the completion of the proceeding required by subsection (a), the Commission shall review and report to Congress on--
    (1) any regulations prescribed to eliminate barriers within its jurisdiction that are identified under subsection (a) and that can be prescribed consistent with the public interest, convenience, and necessity; and
    (2) the statutory barriers identified under subsection (a) that the Commission recommends be eliminated, consistent with the public interest, convenience, and necessity.

---

- Section 403 of RAY BAUM'S Act of 2018, Pub. L. 115-141, 132 Stat. 1089 (2018) reads:

Nothing in this title or the amendments made by this title shall be construed to expand or contract the authority of the Commission.

---

Except for the statutes listed above, all relevant statutes and regulations are contained in an Addendum to the Brief for Non-Government Petitioners.

DIGITAL JUSTICE FOUNDATION

## ISSUES PRESENTED

1. **Authority for a Transparency Rule:** In the Order, the
   FCC relied upon both 47 U.S.C. § 257(a) and § 257(c) for
   its transparency rule. Congress has since repealed § 257(c),
   but stated that the repeal shall *not* be construed to reduce
   the FCC's authority. Does the repeal of § 257(c) reduce the
   FCC's authority to promulgate a transparency rule under
   Section 257?

2. **Substance of the Transparency Rule:** In the Order, the
   FCC repealed most of its preexisting transparency rule. In
   doing so, the FCC ignored statutory standards,
   mischaracterized its new rule, made conclusory and
   inconsistent statements about what information will benefit
   consumers, and admitted that the preexisting transparency
   rule cost only about $134,000 despite helping to prevent
   billions of dollars in economic harm. Was the FCC's repeal
   of portions of the preexisting transparency rule lawful?

DIGITAL JUSTICE FOUNDATION
01000100001001010010001100100010000100101001000110010001000010010010001000110

## <u>STANDARD OF REVIEW</u>

Whether the FCC's Order is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

DIGITAL JUSTICE FOUNDATION

## SUMMARY OF ARGUMENT

1. **The FCC has statutory authority under Section 257 for a transparency rule despite the repeal of 47 U.S.C. § 257(c).** Congress was clear when repealing Section 257(c) that it did not want this Court to construe the repeal as reducing the FCC's authority. Thus, Petitioners argument defies a clear Congressional command. Regardless, Section 257(a) and the FCC's ancillary authority are sufficient to promulgate a transparency rule and the FCC sufficiently invoked that authority.

2. **But, the FCC's reasoning to repeal much of the preexisting transparency rule is arbitrary and capricious.** The Order does not apply Section 257's standard. The Order further ignores the ways that consumers are indirectly benefitted by public-interest organizations, and even ignores the Order's own arguments trumpeting the importance of transparency. The Order misconstrues its transparency rule as akin to the 2010 transparency rule. And, the Order nowhere shows how its transparency rule fulfills its purported purpose of facilitating consumer-protection and antitrust enforcement. With respect to transparency, the Order is arbitrary and capricious.

DIGITAL JUSTICE FOUNDATION
010001000100010001001100100010010010100100110010001000100010010010001000110

**STANDING**

The DJF is a public-interest organization. The Order harms the DJF because the Order attempts to remove key disclosure and transparency requirements that had been required. The DJF had intended to use the disclosures for data, analysis, advocacy, and education, as part the DJF's organizational mission. In addition, the Order affects the DJF as a user of internet services.

DIGITAL JUSTICE FOUNDATION

# ARGUMENT

## POINT 1 – The Commission Retains Authority for a Transparency Rule Under Section 257 Despite the Repeal of Section 257(c).[1]

### A. Section 257(c)'s repeal had no effect on the FCC's authority to promulgate a transparency rule under Section 257.

Non-Government Petitioners argue that the repeal of Section 257(c) invalidates the Order's transparency rule. Non-Gov't Pet'rs Br. at 55. So do Non-Government Petitioner-Intervenors.[2] Non-Gov't Pet'r-Intervenor Br. at 34-36.

Their argument is a non-starter. This Court has already stated that the FCC has the authority to "impose disclosure requirements on regulated entities" under Section 257. <u>Comcast Corp. v. FCC</u>, 600 F.3d 642, 659 (D.C. Cir. 2010). And, the

---

[1] Although not raised during the FCC's rulemaking, this issue pertains to statutory changes that occurred in March 2018—*after* the Order was adopted. It is not waived.

[2] Moreover, Petitioners' argument does not merely portend a vacatur of the Order and a return to the prior transparency rule. <u>See</u> Non-Gov't Pet'rs Br. at 81. Instead, if true, their argument would implicate the drastic remedy of wiping out nearly all transparency rules. The 2010 transparency rule relied primarily upon 47 U.S.C. § 154(k), known as Section 4(k). <u>See</u> <u>In re Preserving the Open Internet</u> (2010 Order), 25 FCC Rcd. 17905, ¶ 136. But, Section 4(k) was repealed at the same time as Section 257(c). <u>See</u> RAY BAUM'S Act of 2018, Pub. L. 115-141, § 402(h)(1)(A), 132 Stat. 1089 (2018). Moreover, the 2015 Order did not identify separate authority for the transparency rule as it merely viewed its changes as "enhancements" to the 2010 Order. <u>See</u> <u>In re Protecting & Promoting Open Internet</u>, 30 FCC Rcd. 5601, ¶ 161 ("Today, we build off of th[e 2010 Order's] baseline."), <u>see also</u> <u>id.</u> ¶¶ 154-85. Thus, if Petitioners were right, the survival of any transparency rule would rely entirely on 47 U.S.C. § 218, the last statutory basis identified for transparency in the 2010 Order. <u>See</u> 25 FCC Rcd. 17905, ¶ 137.

DIGITAL JUSTICE FOUNDATION

very law that repeals Section 257(c) is clear that 257(c)'s repeal has no substantive effect on FCC authority: "***Nothing*** in this title or the amendments made by this title shall be construed to expand or ***contract*** the authority of the Commission." RAY BAUM'S Act of 2018, Pub. L. 115-141, § 403, 132 Stat. 1089 (2018) (emphasis added). Yet construing Section 257(c)'s repeal to contract FCC authority under Section 257 is *exactly* what Petitioner-Intervenors argue. Non-Gov't Pet'r-Intervenor Brief at 34-36.

Section 257(c)'s repeal had no substantive effect on the FCC's authority or on the Order itself. Section 257(c)'s repeal was part of a housekeeping exercise to reorganize the FCC's many reporting obligations, not an attempt to "hide elephants in mouseholes." Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001).


**B. The Order sufficiently relies upon Section 257(a) alone to justify a transparency rule.**

Even if the repeal of Section 257(c) had any substantive effect on FCC authority, the transparency rule does not live or die with Section 257(c). Section 257(a) itself is a sufficient basis for a transparency rule, and the FCC sufficiently relied upon Section 257(a), and other rulemaking authority, to justify a transparency rule.

DIGITAL JUSTICE FOUNDATION
0100010001001001001100100010001001010010001001100100010010010010010000110

It is Section 257(a) that creates the statutory mandate "for the purpose of identifying and eliminating […] market entry barriers." 47 U.S.C. § 257(a). By contrast, Section 257(c) merely instructed the FCC to report to Congress the following every three years:

- <u>What the FCC has done</u>— "any regulations prescribed to eliminate [market entry] barriers within its jurisdiction," 47 U.S.C. 257(c)(1) (2017);

- <u>What the FCC can do</u>—"any regulations […] that can be prescribed," <u>id.</u>; and

- <u>What the FCC needs Congress to do</u>—"the statutory barriers […] that the Commission recommends be eliminated," 47 U.S.C. § 257(c)(2) (2017).

Certainly, Section 257(c) supported the interpretation of Section 257(a) as a continuing mandate over time because it required Congressional updates every three years, but it was *not* necessary to that interpretation. Even *without* Section 257(c)'s Congressional progress report, Section 257(a) imposes upon the FCC the statutory "purpose of identifying and *eliminating*" market barriers.  And a reasonable interpretation of Section 257(a) is that this mandate continues until the market entry barriers identified in 1997 are wholly eliminated. In turn, ancillary to

3

DIGITAL JUSTICE FOUNDATION
010001000100010001000110010001000100010100100010001100100010001001001001001000110

the "identifying and *eliminating*" of these barriers is the transparency or disclosure of those barriers, *i.e.*, a transparency rule.

Thus, Petitioners' reliance on the phrase in Section 257(a) "by regulations pursuant to its authority under this chapter (other than this section)" to challenge the basis of a transparency rule is misplaced. <u>See</u> Non-Gov't Pet'r-Intervenors Br. at 31-34. That phrase could reasonably apply only to "eliminating"—but perhaps not "identifying"—barriers in Section 257(a).

And, even if the phrase "other than this section" applied to both "identifying <u>*and*</u> eliminating […] barriers" <u>Comcast</u> upheld a transparency rule on the basis of *ancillary* authority, *i.e.*, a rule predicated on other authority as well—authority "other than this section"—to support the FCC's statutory mandate to identify and eliminate market entry barriers.

In fact, the Order identified other sources of authority, <u>see</u> Order, ¶ 232 n.847 [JA __], and relied upon Section 257(a) independently of 257(c):

- "Aspects of the performance of broadband Internet access services, particularly if undisclosed, thus could constitute barriers within the scope of section 257(a) in the future, depending on how the marketplace evolves, regardless of whether or not particular practices do so today." Order, ¶ 235 [JA __].

4

DIGITAL JUSTICE FOUNDATION
010001000100101001000110010001000101001001001001000100010010010100010000110

- "While this direct authority [from Section 257(a)] suffices to support the Commission's adoption of the transparency rule, sections 4, 201(b), and 303(r) of the Act also give us rulemaking authority to implement the Act, including the provisions we rely on as authority for our transparency requirements." Order, ¶ 232 n.847 [JA __].

Furthermore, reliance upon Section 257 should come as no surprise to Petitioners because the *prior* FCC had included a discussion of transparency in its Section 257 report to Congress, see <u>In re Section 257 Triennial Report to Congress</u>, 31 FCC Rcd. 12037 (2016), ¶ 52, and even identified forbearance from applying certain prior transparency requirements to small businesses as part of the FCC's efforts to fulfill the Section 257(a) mandate, <u>id.</u> ¶ 89.

Thus, Congress did not change the substance of the statute when it repealed Section 257(c) and, even if it had, the FCC sufficiently relies upon 257(a), independently from 257(c), to justify a transparency rule.

//

//

//

//

//

//

DIGITAL JUSTICE FOUNDATION
010001000100010010001100100010001001010010011001000100010010010010010010001001000110

5

## POINT 2 – Nonetheless, the Commission's Repeal of Preexisting Transparency Requirements Was Arbitrary and Capricious.[3]

Even though the Commission had the authority to adopt a transparency rule under Section 257, the scope of the rule it in fact adopted is arbitrary and capricious.

The Order's transparency rollback was *not* "based on a consideration of the relevant factors." See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971). Indeed, the FCC "entirely failed to consider an important aspect of the problem," while offering "an explanation that runs counter to the evidence" and even counter to the FCC's own rationale. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43-44 (1983). Thus, this Court should vacate the rollback of portions of the prior transparency rule.

### A. The FCC failed to focus on entrepreneurs and small businesses as required by Section 257(a).

First, the FCC failed to apply Section 257(a)'s statutory standards when it decided to repeal certain transparency provisions. See Order, ¶¶ 215-231 [JA __-

---

[3] "A party must first raise an issue with an agency before seeking judicial review." ExxonMobil Oil Corp. v. FERC, 487 F.3d 945, 962 (D.C. Cir. 2010). Here, the issues of the appropriate scope of the transparency rule, however, were raised by other commenters as well as, implicitly, by the prior order itself. Moreover, internal inconsistencies in the FCC's reasoning and its failure to apply statutory standards did not arise until *after* the Order was released. This issue is not waived.

DIGITAL JUSTICE FOUNDATION
010001000100010100010001100100010001001010010001001010010001000110

__]. Section 257(a) requires the FCC to consider "market entry barriers for *entrepreneurs and other small businesses*." 47 U.S.C. § 257(a) (emphasis added). And, although the Order mentions entrepreneurs and small businesses at times, the FCC failed to analyze their interests in the specific context of repealing portions of the transparency rule.

For example, the FCC begins "[r]efining" the transparency rule with an announcement that "many of [2015's] additional reporting obligations significantly increased the burdens imposed on ISPs without providing countervailing benefits to consumers or the Commission." Order, ¶ 215 [JA __]. There is no mention of entrepreneurs or small businesses. Id.

Elsewhere, after concluding that the preexisting transparency requirements "unduly burden ISPs without providing a comparable benefit to consumers," the FCC nowhere considers the benefits of transparency to entrepreneurs or small businesses. See Order, ¶ 225 [JA __].

Likewise, when eliminating the direct-notification requirement, the FCC makes the conclusory assumption that direct notification is "unnecessary" without examining how direct notifications—or their absence—would affect entrepreneurs and small businesses. See Order, ¶ 230 [JA __].

These repeated failures to analyze a rule with appropriate statutory factors in mind lies in stark contrast to the FCC's extensive discussion of entrepreneurs and

7

DIGITAL JUSTICE FOUNDATION
010001000100101001001110010001001010010010011001000100010010010010001010

small businesses when analyzing Section 257(a) as a source of authority for a transparency rule. <u>See</u> Order, ¶¶ 232-238 [JA __-__].

Insofar as the FCC provided no analysis of the effect of repealing transparency requirements on entrepreneurs and small businesses—as required by the statute—its transparency rollback was arbitrary and capricious.

**B. The FCC's discussion of consumers contradicts its discussion elsewhere in the Order of how transparency benefits consumers.**

Second, even accepting the FCC's failure to focus on entrepreneurial interests in reversing course on transparency, the FCC's analysis regarding consumers is at odds with statements it makes elsewhere in the Order.

The FCC somehow concludes that the only information that can be beneficial to consumers is information that is *directly* useful and understood by consumers: "After all, consumers have little understanding of what packet loss means; what they do want to know is whether their Internet access service will support real-time applications, which is the consumer-facing impact of these performance metrics." Order, ¶ 226 [JA __].

This argument, however, flies in the face of how modern society functions. Journalists, public-interest groups, and consumer-advocacy organizations would distill the technical information and use that information in the interests of

DIGITAL JUSTICE FOUNDATION

consumers. Indeed, elsewhere in the Order, the FCC admits that the FCC *itself*

relies upon these very institutions of civil society to further its enforcement

activities, *i.e.*, to benefit consumers and the public. Order, ¶ 299 [JA __] (There are

"staff in the Enforcement Bureau who also monitor media reports and conduct

additional research to identify complaint trends so the Commission can best target

its enforcement capabilities.").

 Similarly, the FCC's own understanding of the purpose of a transparency

rule is that it will *indirectly* benefit consumers by facilitating enforcement of

consumer-protection and antitrust laws, Order, ¶ 117 [JA __], FTC enforcement,

id. ¶ 141 [JA __], and, of course, the rational decision of internet-service providers

to refrain from abuses that will become public, id. ¶ 142 [JA __].

 It is these notably *indirect* effects of transparency that make "Sunlight […]

the best of disinfectants," as Order acknowledges. See Order, ¶ 209 [JA __]

(quoting Justice Brandeis). Thus, it is arbitrary and capricious for the Order to

entirely hinge its repeal of conduct rules on *indirect* effects of transparency, but

then eliminate transparency rules because they are not *directly* beneficial to

consumers.[4] This is an Order at odds with itself.

---

[4] Indeed, the FCC's own rationale requiring *direct* consumer benefit would perhaps
eliminate the entire transparency rule, if rationale were not utterly at odds with
reality. Cf. Order, ¶ 230 [JA __]. Few if any consumers look at privacy policies.
But privacy policies, which are the closest analog to what the FCC requires with its

DIGITAL JUSTICE FOUNDATION

### C. The FCC mischaracterized its rolled-back transparency as a near-return to the 2010 transparency rule.

Third, the Order mischaracterizes its transparency rule as a near-return to the 2010 transparency rule. In the FCC's words, it returns to "the transparency rule as established in the Open Internet Order, with some modifications." Order, ¶ 215 [JA __]. This is a canard.

Like the 2010 transparency rule, the Order lists similar required disclosures. Order, ¶ 218-220 [JA __-__]. But the similarities largely end there:

- The 2010 order was illustrative, and "emphasize[d] that this list [of disclosures] is not necessarily exhaustive, nor is it a safe harbor." 2010 Order, 25 FCC Rcd. 17905, ¶ 56. By contrast, the current Order "do[es] not mandate disclosure of any other network management practices" beyond those expressly listed. Order, ¶ 220 [JA __].

- The 2010 Order "decline[d] to adopt a specific format for disclosures." 2010 Order, 25 FCC Rcd. 17905, ¶ 58. By contrast, the current Order "give ISPs two options for disclosure." Order, ¶ 229 [JA __].

---

purported transparency rule, _indirectly_ benefit their consumers through civil society, administrative agencies, and class-action attorneys.

DIGITAL JUSTICE FOUNDATION
010001000100010100010001100100010001001010001001100100010001000100100100110

- A "key purpose of the [2010] transparency rule is to enable third-party experts such as independent engineers and consumer watchdogs to monitor and evaluate network management practices." 2010 Order, 25 FCC Rcd. 17905, ¶ 60. By contrast, this Order requires only those disclosures that will be *directly* beneficial to consumers, ignoring how disclosures may be *indirectly* beneficial to consumers when their information is distilled by engineers and consumer watchdogs. <u>See</u> *supra* Part 2.B.

The "requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it is changing position." <u>FCC v. Fox TV Stations, Inc.</u>, 556 U.S. 502, 515 (2009).

Thus, when the Order equates its closed, format-specific disclosure rule intended only for consumers to an illustrative, open-ended, format-agnostic disclosure rule intended for experts, the Order defies reason. The Order fails to state what it does and, on this basis as well, the transparency rollback is arbitrary and capricious.

//

//

//

//

DIGITAL JUSTICE FOUNDATION
010001000100100100011100100010010101000011001000100010010100100110

**D. The FCC never explained why the existing transparency provisions were overburdensome or how remaining transparency provisions are sufficient to facilitate consumer-protection and antitrust lawsuits.**

Finally, the FCC nowhere explains why its preemptive transparency rule will be sufficient to fulfill the purported purpose of facilitating consumer-protection and antitrust lawsuits.

There is no discussion of pleading requirements, of how these watered-down disclosures will lead to lawsuits, or of why these rolled-back requirements are enough to facilitate robust consumer-protection or antitrust enforcement. See generally Order.

Moreover, the FCC predicates other sections of the Order, such as the repeal of the conduct rules, on the theory that internet-service provider harms are "speculative," but admits the issue is hotly disputed. See, e.g., Order, ¶ 116. One would think then that the FCC's transparency rule would try to gather enough data to resolve some of the disputes about the necessity of net neutrality, perhaps the most hotly disputed issue in telecommunications. The FCC's watered-down transparency makes no attempt to settle the controversy.

Finally, the FCC itself admits that the preexisting transparency rule had minimal costs. According to an estimate adopted by the FCC, the repealed transparency provisions would have cost in the realm of $134,000 annually and taken the labor hours of only 2.5 employees. Order, ¶ 314 n.1115 [JA __]. A few

12

DIGITAL JUSTICE FOUNDATION

hundred thousand dollars to better facilitate antitrust, consumer protection, and establish a source of truth regarding if and when there are abuses by internet-service providers, and better prevent billions of dollars in economic harm sounds like an excellent deal.

Repealing preexisting transparency provisions was arbitrary and capricious.

## **CONCLUSION**

This Court should (1) vacate the Order's transparency rule, (2) declare that the 2015 transparency rule remains in effect.

August 27, 2018                              Respectfully submitted
                                             */s/ Andrew Grimm*
                                             Andrew Grimm
                                             Gregory Keenan
                                             DIGITAL JUSTICE FOUNDATION
                                             15287 Pepperwood Drive
                                             Omaha, NE 68154
                                             (650) 422-8035
                                             andrew@digitaljusticefoundation.org

                                             *Counsel for the DJF*

DIGITAL JUSTICE FOUNDATION

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

Excluding the parts of the document exempted by Rule 32(f), this motion contains 2986 words.

This motion has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

*/s/ Andrew Grimm*
Andrew Grimm

DIGITAL JUSTICE FOUNDATION
01000100010010100100011000110001000100101010001001100100010001001010010001000110

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 27, 2018 I electronically filed the foregoing with the Clerk of this Court using this Court's CM/ECF system. Participants in this case who are registered CM/ECF users will be served by CM/ECF.

*/s/ Andrew Grimm*
Andrew Grimm

DIGITAL JUSTICE FOUNDATION