No. 18-1051

Consolidated Cases: 18-1052, 18-1053, 18-1054, 18-1055, 18-1056, 18-1061, 18-1062, 18-1064, 18-1065, 18-1066, 18-1067, 18-1068, 18-1088, 18-1089, 18-1105

_____

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

MOZILLA CORPORATION, et al.

*Petitioners*,

v.

FEDERAL COMMUNICATIONS COMMISSION
AND UNITED STATES OF AMERICA,

*Respondents*.

On Petitions for Review of an Order
of the Federal Communications Commission
*In re Restoring Internet Freedom*, 33 FCC Rcd 311 (2018)

_____

# PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

_____

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
gregory@digitaljusticefoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

*Counsel for Digital Justice Foundation*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY .......................................................................................... vi

FEDERAL RULE OF APPELLATE PROCEDURE 35(b) STATEMENT .............1

BACKGROUND ...................................................................................3

REASONS FOR GRANTING REHEARING ......................................11

     I.     THE TRANSPARENCY RULE HAS ONGOING NATIONWIDE IMPORTANCE. ......................................................................11

     II.    THE PANEL OPINION MISSTATED THE DIGITAL JUSTICE FOUNDATION'S POSITION ABOUT THE TRANSPARENCY RULE...............13

     III.   THE TRANSPARENCY RULE IS ARBITRARY AND CAPRICIOUS UNDER THIS COURT'S PRECEDENTS AND *FOX*. ....................................16

          A.    The Order is internally inconsistent........................................16

          B.    The Order attempts *sub silentio* changes to the transparency rule........................................................................19

          C.    No party responded to either of these arguments about the Order's inconsistencies. ........................................................22

CONCLUSION .................................................................................24

CERTIFICATE OF COMPLIANCE

ADDENDUM

     Excerpt of Panel Decision (Oct. 1, 2019)

     Certificate of Parties and *Amici*

     Corporate Disclosure Statement

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

ANR Storage Co. v. FERC,
    904 F.3d 1020 (D.C. Cir. 2018)....................................................................16

Comcast Corp. v. FCC,
    600 F.3d 642 (D.C. Cir. 2010)....................................................................3, 4

Department of Commerce v. New York,
    139 S. Ct. 2551 (2019)................................................................................19

Dist. Hosp. Partners, L.P. v. Burwell,
    786 F.3d 46 (D.C. Cir. 2015)......................................................................17

Encino Motorcars, LLC v. Navarro,
    136 S. Ct. 2117 (2016)...............................................................................20

FCC v. Fox TV Stations, Inc.,
    556 U.S. 502 (2009).......................................................................... 15, 19

NRDC v. NRC,
    879 F.3d 1202 (D.C. Cir. 2018)..................................................................17

Oxy USA v. FERC,
    64 F.3d 679 (D.C. Cir. 1995)......................................................................19

Portland Cement Ass'n v. EPA,
    665 F.3d 177 (D.C. Cir. 2011)....................................................................19

U.S. Sugar Corp. v. EPA,
    830 F.3d 579 (D.C. Cir. 2016)....................................................................17

U.S. Telecom Ass'n v. FCC,
    825 F.3d 674 (D.C. Cir. 2016)......................................................................5

Verizon v. FCC,
    740 F.3d 623 (D.C. Cir. 2014)......................................................................5

**Rules**

FRAP 28.............................................................................................................1, 13

FRAP 35................................................................................................................1

FRAP 40............................................................................................................13

**Regulations**

In re Preserving the Open Internet,
        25 FCC Rcd 17905 (2010).................................................... 3, 4, 6, 9, 20, 21

In re Protecting & Promoting Open Internet,
        30 FCC Rcd. 5601 (2015).............................................................................5

In re Restoring Internet Freedom,
        33 FCC Rcd 311 (2018)........................................ 6, 7, 8, 9, 10, 17, 18, 20, 21

# GLOSSARY

| | |
|---|---|
| 2010 Order | *In re Preserving the Open Internet*, 25 FCC Rcd 17905 (2010) |
| 2015 Order | *In re Protecting & Promoting Open Internet*, 30 FCC Rcd. 5601 (2015) |
| 2018 Order | *In re Restoring Internet Freedom*, 33 FCC Rcd 311 (2018) |
| Commission | Federal Communications Commission (Respondent) |
| DJF | Digital Justice Foundation (Intervenor) |
| ISP | Internet Service Provider |

## FEDERAL RULE OF APPELLATE PROCEDURE 35(b) STATEMENT

Whether the Order's transparency rule is arbitrary and capricious is a matter of exceptional importance to telecommunications policy.  FRAP 35(b)(1)(B).

Here, the DJF argued that the 2018 Order's transparency rule was arbitrary and capricious because of internal inconsistencies and faulty logic.  Therefore, the DJF asked that this Court "(1) vacate the Order's transparency rule, and (2) declare that the 2015 transparency rule remains in effect."  Opening Br. at 13; Reply Br. at 11; cf. FRAP 28(a)(9) ("short conclusion stating the precise relief sought").

The Panel Opinion, however, plainly misstated the DJF's position.

The Opinion misattributed to the DJF a position neither held nor argued for in its Briefs: that the Commission "should have retained aspects of the rule contained in a *2010 Order* issued by the Commission."  Panel Op. at 71 [A5] (emphasis added).

Given its misreading of the DJF's position, the Panel did not address two arguments explaining why the Order's 2018 transparency rule fails to meet certain doctrinally well-defined parameters of this Circuit's arbitrary-and-capricious standard of review.  These arguments are supported by Supreme Court authorities or a multitude of D.C. Circuit authorities, respectively.  FRAP 35(b)(1)(A).

For these reasons, the DJF respectfully asks for rehearing, panel or *en banc*. Given the exceptional, ongoing importance of the Commission's transparency rule to the vast array of the nation's Internet users, rehearing is proper.

## BACKGROUND

**1.** Transparency by Internet-service providers is a critical component of net neutrality.

In this Court's first foray into the legality of net neutrality, it expressly suggested that the Commission "might impose disclosure requirements" on Internet-service providers.  Comcast Corp. v. FCC, 600 F.3d 642, 659 (D.C. Cir. 2010).

The Commission took the hint.  Later that year, the Commission adopted the first net-neutrality order, the 2010 Order, with "three basic rules" grounded in "broadly accepted Internet norms[.]"  In re Preserving the Open Internet, 25 FCC Rcd 17905 ¶ 1 (2010).  The *first* of these three rules was a transparency rule.  Id. That transparency rule required ISPs to "disclose the network management practices, performance characteristics, and terms and conditions of their broadband services."  Id.

The 2010 Order made clear that the intended audience for these disclosures was not just consumers.  In articulating the many virtues of transparency, the 2010 Order presumed a *variety of audiences* for its disclosures:

- consumers, *i.e.*, the Internet's "end users";

- "startups" and technology companies;

- the "Commission" itself; and

- the "Internet community" as well.

Id. ¶ 53.

The Commission envisioned that the "Internet community" would "identify problematic conduct and suggest fixes." Id.  After all, the Internet community had played a major role in identifying and remedying some of the first net-neutrality violations.  See Comcast, 600 F.3d at 644-645 (describing origin of early net-neutrality enforcement action).

In fact, the 2010 Order was emphatic that its disclosures were intended so that the Internet community's expertise would play a meaningful role in protecting net neutrality:

> A ***key purpose*** of the transparency rule is to enable third-party ***experts*** such as independent engineers and consumer watchdogs to monitor and evaluate network management practices, in order to surface concerns regarding potential open Internet violations.

2010 Order ¶ 60 (emphasis added).

Yet the 2010 Order was also clear that transparency was necessary, but not sufficient, to accomplish net neutrality: "The record does not convince us that a transparency requirement by itself will adequately constrain problematic conduct[.]" Id. ¶ 61.

4

**2.** In 2014, this Court vacated two of the 2010 Order's three rules, but left one—the 2010 transparency rule—intact. Verizon v. FCC, 740 F.3d 623, 659 (D.C. Cir. 2014); see also id. at 668 n.9 (Silberman, J., concurring and dissenting in part) (concurring in majority's affirmance of transparency rule).

The Commission went back to the drawing board. As it reformulated the 2010 Order's vacated anti-blocking and anti-discrimination rules, the Commission also decided to "adopt enhancements to the existing [2010] transparency rule" in its 2015 Order. In re Protecting & Promoting Open Internet, 30 FCC Rcd. 5601 ¶ 154 (2015).

Like the 2010 transparency rule, the 2015 enhancements were intended to serve a *variety of audiences*: "end-user consumers, edge providers of broadband products and services, and the *Internet community*." Id. (emphasis added). Like in the 2010 Order's transparency rule, the 2015 Order's transparency rule was intended to "help the wider Internet community monitor provider practices to ensure compliance with our Open Internet rules and providers' own policies." Id. ¶ 163.

The 2015 Order's "enhanced" transparency rule was not challenged in this Court, though its reclassification of ISPs and reformulated conduct rules were. See generally U.S. Telecom Ass'n v. FCC, 825 F.3d 674 (D.C. Cir. 2016).

5

**3.** Then, with the change of Administrations, the Commission decided upon a new regulatory approach in its 2018 Order.  See generally In re Restoring Internet Freedom, 33 FCC Rcd 311 (2018).  Under the 2018 Order's approach, the transparency rule is nearly the entirety of net-neutrality regulation.

As before, the 2018 Order "require[s] ISPs to be transparent."  Id. ¶ 3.  The 2018 Order purports to "return to the transparency rule the Commission adopted in *2010* with certain limited modifications to promote *additional* transparency[.]"  Id. (emphasis added).

Yet, unlike its predecessors, the 2018 Order deems transparency *alone* to be a sufficient regulatory response.  It concludes that the Internet "conduct rules are unnecessary *because* [of] the transparency requirement[.]"  Id. ¶ 4 (emphasis added).  A transparency rule—once deemed a necessary-but-insufficient regulatory response—was now deemed sufficient by itself.  Compare 2018 Order ¶ 4 with 2010 Order ¶ 61 (unconvinced "that a transparency requirement by itself will adequately constrain problematic conduct").

To justify how a transparency rule prophylactically renders conduct rules unnecessary, the 2018 Order relies upon a *variety of audiences* for its required disclosures:

- It relies upon the "the *Internet community* [to] identify problematic conduct and suggest fixes[.]"  Id. ¶ 240 (quoting 2010 Order) (emphasis added).

- It relies upon "third-party *experts* such as independent engineers and consumer watchdogs to monitor and evaluate network management practices."  Id. ¶ 240 (quoting 2010 Order) (emphasis added).

- It notes that the "two most-discussed incidents" of net neutrality enforcement were Madison River and Comcast/BitTorrent—which were prompted by *expert* "complaints to the Commission and [investigative] media reports[.]"  Id. ¶ 241.

- It relies upon the "*expert* consumer protection agency" when it states that "transparency amplifies the power of antitrust law and the FTC Act[.]"  Id. ¶ 244 (emphasis added).

In eliminating the conduct rules, the 2018 Order repeatedly emphasizes that transparency *to* technical and legal "*experts*" in the "*Internet community*"—not mere lay-person consumers—undergirds the prophylactic power of transparency.

7

Yet in determining the _scope_ of its transparency rule, the 2018 Order

contradicts its later reliance on this variety of audiences.  See id. ¶¶ 209-231 (2018

transparency rule).

When deciding the "Content of Required Disclosures[,]" id. ¶¶ 218-227, the

2018 Order eliminates technical disclosure requirements that had existed in the

2015 Order on a rationale that nowhere considers _experts_:

> After all, consumers have little understanding of what packet loss
> means; what they _do_ want to know is whether their Internet access
> service will support real-time applications, which is the consumer-
> facing impact of these performance metrics.

Id. ¶ 226 (emphasis in original).  The 2018 Order fails to see how "esoteric

metrics" could be valuable to "consumers or entrepreneurs"—_without_ asking the

value of those metrics to _experts_.  Id.

Certain prefatory paragraphs do mention "Internet ecosystem participants"

and the "Internet community[.]"  Id. ¶¶ 209, 217.  The 2018 Order's operative

transparency sections don't.  Id. ¶¶ 218-227.

Thus, the 2018 Order relies upon a variety of audiences for its transparency

rule—especially experts—when justifying its elimination of the conduct rules.  Yet

when deciding the scope of the 2018 transparency rule, it excludes that variety of

audiences.  Experts are central to transparency in one part of the 2018 Order and

irrelevant to transparency in another.

Furthermore, the 2018 Order purports to be returning to the 2010 Order with minor modifications.  2018 Order ¶¶ 3, 210, 218.  Yet a comparison of the two transparency rules reveals major discrepancies:

|  | **2010 Transparency Rule** | **2018 Transparency Rule** |
|---|---|---|
| **Listed Disclosures** | **Illustrative.**<br><br>"We emphasize that this list is not necessarily exhaustive, nor is it a safe harbor[.]"  ¶ 56. | **Exhaustive.**<br><br>"We do not mandate disclosure of any other network management practices."  ¶ 220. |
| **Format** | **Not specified.**<br><br>"We also decline to adopt a specific format for disclosures, and instead require that disclosure be sufficiently clear and accessible to meet the requirements of the rule."  ¶ 58. | **Specified.**<br><br>"We give ISPs two options for disclosure. First, they may include the disclosures on a publicly available, easily accessible website. […] Alternatively, ISPs may transmit their disclosures to the Commission[.]"  ¶ 229. |
| **Audience** | **Experts.**<br><br>"A key purpose of the transparency rule is to enable third-party experts such as independent engineers and consumer watchdogs to monitor and evaluate network management practices[.]"  ¶ 60. | **Consumers.**<br><br>"[C]onsumers have little understanding of what packet loss means; what they *do* want to know is whether their Internet access service will support real-time applications, which is the consumer-facing impact of these performance metrics."  ¶ 226. |

The Commission never explains why it believes it is returning to the 2010

transparency rule despite these discrepancies.  <u>See generally</u> 2018 Order ¶¶ 209-

231.

## REASONS FOR GRANTING REHEARING

## I.    THE TRANSPARENCY RULE HAS ONGOING NATIONWIDE IMPORTANCE.

Over ninety percent of American adults use the Internet.[1]  Thus, it should not be surprising that this case—a case determining the rules of engagement on such a pervasive medium—has been called "one of the most important cases in Internet law history."[2]

The parties involved in this Court's blockbuster net-neutrality cases substantiate this characterization.  The parties are a cross-section—a veritable who's who—of internet companies, telecommunications companies, respective industry associations, nonprofit organizations, government entities, and prominent policymakers and academics.  Legions of *amici* have come before this Court and legions of citizens have voiced their opinion before the Federal Communications Commission in comments.

Net neutrality is an exceptionally important issue.

This Petition raises the issue of one central aspect of net-neutrality policy—transparency into and required disclosures of the operations of the Internet-service providers.  Not only is transparency the centerpiece of the Commission's 2018 net-

---

[1] https://www.pewresearch.org/internet/fact-sheet/internet-broadband/.
[2] https://www.npr.org/2019/02/01/690609162/net-neutrality-goes-back-to-court

neutrality regulation, transparency is also essential to guiding policymakers and civil society going forward.

Given the Panel's Opinion, transparency into net-neutrality is only more essential. Indeed, all sides _agree_ that transparency is of paramount importance. In fact, the Commission believes that transparency done right provides a cure all that "obviate[s] the need for conduct rules." FCC Brief at 58. Simply put, transparency is no mere afterthought in the net neutrality policy.

The Panel Opinion has "cleared the way" for net-neutrality conduct rules by the States.[3] Given that the net-neutrality debates are poised to be relitigated in many States, transparency will become increasingly important to inform these debates. And, should Congress ever decide to step in, disclosures into ISPs' practices will guide Congress as well.

Transparency has always been a critical component of net-neutrality regulation. Now, it is more essential than ever.

---

[3] https://cyberlaw.stanford.edu/blog/2019/10/court-decision-clears-way-state-net-neutrality-laws

## II.    THE PANEL OPINION MISSTATED THE DIGITAL JUSTICE FOUNDATION'S POSITION ABOUT THE TRANSPARENCY RULE.

Rehearing is necessary because the Panel Opinion "misapprehended" the Digital Justice Foundation's legal position in a manner that left arguments unaddressed.  Cf. FRAP 40(a)(2).

The DJF's position was plainly stated in its Opening Brief and clearly reiterated in its Reply Brief:

> This Court should (1) vacate the Order's transparency rule, and (2) declare that the 2015 transparency rule remains in effect.

Opening Br. at 13; Reply Br. at 11; cf. FRAP 28(a)(9) ("a short conclusion stating the precise relief sought").

The Panel Opinion, however, misstates the DJF's position:

> Intervenor Digital Justice Foundation argues that while the Commission has authority to maintain a transparency rule, it should have retained aspects of the rule contained in a **2010 Order** issued by the Commission.

Panel Op. at 71 [A5] (emphasis added).

The Opinion is mistaken; the DJF took no such position.  Indeed, the DJF's request for relief **nowhere** mentioned the 2010 Order's transparency rule whatsoever.

13

The DJF was by no means seeking a return to the 2010 transparency rule—nor were its arguments an appeal to the policy wisdom of ***any*** particular transparency rule.  Simply put, the DJF nowhere proffered its opinions about what the Commission "should have retained" or should have done.  <u>See</u> Panel Op. at 71 [A5].

Rather, the DJF argued that the logical flaws, internal inconsistencies, and self-contradictions in the Commission's own 2018 Order rendered its transparency rule arbitrary and capricious.  <u>See</u> Opening Br. at 8-11.  The DJF's Briefs advanced legal arguments explaining how the 2018 Order's new transparency rule violates well-established doctrinal parameters of the arbitrary-and-capricious standard.  <u>See id.</u>

The Panel Opinion misunderstood the DJF's position to be advocating a policy preference for the 2010 transparency rule.  Because of this misunderstanding, the Opinion failed to engage the DJF's arguments regarding the 2018 Order's faulty reasoning with respect to the 2018 Order's <u>own</u> purported reversion to the 2010 transparency rule.

Thus, the Opinion's statement that the DJF was somehow advocating for a return to the **2010** Order's transparency rule is no mere scrivener's error. Nor a minor misstatement.  It led the Panel Opinion to disregard legal arguments pertaining to the 2018 Order's logic as mere discussions of policy preference.

14

Specifically, the DJF made two arguments which the Panel Opinion nowhere addresses:

- The _internal-inconsistency_ argument: "The Order is irreconcilable: it relies on transparency to justify its repeal of the conduct rules. Then it guts transparency. DJF Br. at 8-9." Reply Br. at 11.

- The _sub silentio_ argument: "The Order does not meet the 'demand that it display awareness that it _is_ changing position' from the 2010 transparency rule. See FCC v. Fox TV Stations, Inc., 556 U.S. 502, 515 (2009) (emphasis in original), DJF Br. at 10-11." Id.

Thus, the DJF asked this Court to vacate the 2018 Order's transparency rule. Vacating the 2018 transparency rule would have the natural consequence of leaving the 2015 transparency rule in place.

The DJF's position was that the Commission _itself_ purported to be returning to the 2010 transparency rule yet what it conjured up was an unrecognizable visage. Thus, the DJF asked this Court to vacate the 2018 transparency rule, _not_ somehow resurrect the true 2010 transparency rule.

15

## III.    THE TRANSPARENCY RULE IS ARBITRARY AND CAPRICIOUS UNDER THIS COURT'S PRECEDENTS AND FOX.

The Digital Justice Foundation made *four* legal arguments why the 2018 transparency rule is arbitrary and capricious.  Opening Br. at 6-13.  The Panel Opinion addressed *one* of them.  Panel Op. at 72 [A6]; see Opening Br. at 6-8 (II.A).

The remaining three arguments were unaddressed.  See Panel Op. at 71-72 [A5-A6].  The DJF seeks rehearing for *two* of these unaddressed arguments:

- the *internal-inconsistency* argument, Opening Br. at 8-9; and

- the *sub silentio* argument, id. at 10-11.

Each is an independent and sufficient ground for vacating the 2018 transparency rule.  Each is addressed below in turn.

### A.    The Order is internally inconsistent.

The DJF characterized the 2018 Order as "an Order at odds with itself." Opening Br. at 9.  Emphatically, because the 2018 Order "is internally inconsistent, it is arbitrary and capricious."  ANR Storage Co. v. FERC, 904 F.3d 1020, 1028 (D.C. Cir. 2018).

16

This Court "has '***often*** declined to affirm an agency decision if there are unexplained inconsistencies in the final rule.'" U.S. Sugar Corp. v. EPA, 830 F.3d 579, 650 (D.C. Cir. 2016) (emphasis added); Dist. Hosp. Partners, L.P. v. Burwell, 786 F.3d 46, 59 (D.C. Cir. 2015) (same).  "***Of course***, it would be arbitrary and capricious for the agency's decision making to be 'internally inconsistent.'" NRDC v. NRC, 879 F.3d 1202, 1214 (D.C. Cir. 2018) (emphasis added).

Here, the 2018 Order is internally inconsistent with respect to its analysis of transparency.  Thus, it is arbitrary and capricious.

When eliminating the conduct rules, the 2018 Order *relies* upon the Internet community and third-party experts.  In this section, transparency is the light-touch solution for net neutrality *because* the "Internet community" and "third-party experts" will use required disclosures to police ISP misbehavior.  2018 Order ¶ 240.  On this theory, third-party experts make transparency so effective that Internet conduct rules are unnecessary.  Id. ¶¶ 240-245.

When fashioning a transparency rule, the *same* 2018 Order *discounts* this same Internet community and these third-party experts.  See, e.g., id. ¶ 226.  In fashioning a transparency rule, the 2018 Order exclusively relies upon what a *consumer* would understand.  The 2018 Order ignores technical disclosures that, elsewhere, it says would assist the experts in advancing consumers' interests.  Id.

That's internally inconsistent.

17

For example, when deciding the substance of the transparency rule, the 2018 Order says a consumer would have no "understanding of what packet loss means[.]"  Id.  Yet when justifying the elimination of the conduct rule, the 2018 Order relies upon an "Internet community" with expertise in precisely that, *i.e.*, what packet loss means.

When the 2018 Order eliminates the conduct rules it relies upon "third-party experts such as independent engineers and consumer watchdogs to monitor and evaluate network management practices."  Id. ¶ 240.  Then, when fashioning a transparency rule, it ignores those very same experts.  Id. ¶ 226.

Stated differently, the 2018 Order touts the *underline indirect* benefits of transparency when justifying the elimination of the conduct rules.  Then, the 2018 Order limits its understanding to *direct* consumer benefits when fashioning the very transparency rule that is supposed to deliver these indirect benefits. Opening Br. at 8-9.

Again, that's internally inconsistent.

Yes, the Panel Opinion is correct that arbitrary-and-capricious review is "particularly deferential[.]"  See Panel Op. at 72 [A6].  ***Yet*** there are doctrinally developed parameters to arbitrary-and-capricious review.

"The Administrative Procedure Act embodies a 'basic presumption of judicial review[.]'"  Department of Commerce v. New York, 139 S. Ct. 2551, 2567

(2019).  Indeed, this Court has not hesitated to deem agency action "arbitrary and capricious because it was '***internally inconsistent*** and inadequately explained[.]'" Portland Cement Ass'n v. EPA, 665 F.3d 177, 187 (D.C. Cir. 2011) (emphasis added).

Arbitrary-and-capricious review is "deferential, but [courts] are 'not required to exhibit a naiveté from which ordinary citizens are free.'"  Department of Commerce, 139 S. Ct. at 2575.  Even the most legally unsophisticated citizens would know what an agency is doing when it says something in one breath and then discounts it in the next.  They would know the agency was talking out of both sides of its mouth.

Here, the Commission "has staked out an internally inconsistent and thus untenable position" on transparency.  Oxy USA v. FERC, 64 F.3d 679, 701 (D.C. Cir. 1995).

**B.    The Order attempts *sub silentio* changes to the transparency rule.**

Also, the DJF characterized the 2018 Order's purported return to the 2010 Order's transparency rule as "a canard."  Opening Br. at 10.

An agency may not "depart from a prior policy *sub silentio*[.]"  Fox TV, 556 U.S. at 515.  When an agency changes position, it "must at least 'display awareness that it is changing position' and 'show that there are good reasons for

19

the new policy.'"  Encino Motorcars, LLC v. Navarro, 136 S. Ct. 2117, 2126

(2016).

If it doesn't, "an 'unexplained inconsistency' in agency policy is 'a reason

for holding an interpretation to be an arbitrary and capricious change from agency

practice.'"  Id. (quoting Brand X, brackets removed).

Here, the 2018 Order *purported* to return to the 2010 transparency rule, but

that is inaccurate.

There are *structural differences* between these two rules.  The 2010 rule is

*illustrative*, leaving room for the Commission to require further disclosures that fit

within its conceptual scope.  2010 Order ¶ 56 ("[T]his list is not necessarily

exhaustive, nor is it a safe harbor[.]").  By contrast, the 2018 rule is *exhaustive*; it

"do[es] not mandate disclosure of any other network management practices"

beyond those expressly listed.  2018 Order ¶ 220.

Thus, although the 2010 and 2018 rules appear to be similar in what they

require to be disclosed, they are quite different.  The 2010 rule can evolve; the

2018 order cannot.

Furthermore, the rules differ with respect to their *formats*.  The 2010 rule

"decline[s] to adopt a specific format[.]"  2010 Order ¶ 56.  By contrast, the 2018

Order provides "two options for disclosure"—either the ISPs website or

submission to the Commission.  2018 Order ¶ 229.

20

The two rules have different *animating purposes*.  A "key purpose" of the 2010 rule is to empower "third-party *experts*" with the knowledge to police ISP misconduct.  2010 Order ¶ 60 (emphasis added).  By contrast, the 2018 rule focuses almost exclusively on what *consumers* "*do* want to know" about their ISP in deciding the scope of the transparency rule.  2018 Order ¶ 226.  One seeks to inform ivory-tower intellects.  The other seeks to inform the lowest common denominator.  Neither is necessarily better but they are undoubtedly *not* the same policy.

Finally, the two rules are radically different in their estimated *effects*.  The 2010 rule is self-consciously ancillary because the 2010 Order did not anticipate "that a transparency requirement by itself will adequately constrain problematic conduct."  2010 Order ¶ 61.  Yet, unlike its 2010 rule, the 2018 Order deems transparency *alone* to be a sufficient regulatory response, rendering Internet conduct rules "unnecessary[.]"  2018 Order ¶ 4.

Given different structures, purposes, and estimated effects, it is hard to see how the 2010 and 2018 transparency rules are of the same ilk.  Their significant differences suggest that the Comission made *sub silentio* changes to the transparency rule—failing to display an articulated awareness that the Commission was, in actuality, creating a newfound rule.

21

In sum, the 2018 transparency rule is arbitrary and capricious. If you cross-reference it with the 2018 Order's discussion of the conduct rules, you'll find inconsistency. <u>See</u> Section III.A, *supra*. Likewise, if you cross-reference the 2018 transparency rule with the 2010 rule, you'll also find inconsistencies.

### C.     No party responded to either of these arguments about the Order's inconsistencies.

Neither the Commission nor the Panel responded to either the DJF's *internal-inconsistency* argument or its *sub silentio* argument.

The Commission chose not to respond to these arguments. <u>See generally</u> FCC Br. Instead, the Commission argued that the DJF's arguments were procedurally barred. <u>Id.</u> at 103 n.30.

The Panel properly disposed of the Commission's procedural arguments as having "no merit." Panel Op. at 71 [A5]. Indeed, the Panel endorsed the DJF's point that this Court has authority to "consider whether the Commission 'relied on faulty logic[.]'" <u>Id.</u>; <u>see</u> DJF Reply Br. at 7.

Respectfully, however, the Panel Opinion does not engage the DJF's arguments addressing the Commission's faulty logic.

Instead, the Panel Opinion misconstrued the DJF's merits position to be advocating for a return to the 2010 Order's transparency rules. On that misunderstanding, the Panel concluded that the DJF's position could not "prevail under our particularly deferential arbitrary-and-capricious review." Panel Op. at 72 [A6].

The Panel Opinion, however, nowhere addressed other arguments detailing arbitrary-and-capricious inconsistencies in the 2018 Order. These arguments went completely without response. <u>See generally</u> Panel Op.; FCC Br.; Joint Respondent-Intervenor Br., Goldstein Br.

The DJF's arguments speak to the doctrinally well-defined parameters of arbitrary-and-capricious review. Respectfully, these arguments merit a response.

\* \* \* \* \* \*

The great American poet Walt Whitman once wrote:

Do I contradict myself?
Very well then I contradict myself[.]

Walt Whitman might be forgiven such capriciousness in the name of poetic license.

The Administrative Procedure Act, however, is not so forgiving.

## CONCLUSION

On rehearing, this Court should (1) vacate the Order's transparency rule, and (2) declare that the 2015 transparency rule remains in effect.

Date: October 31, 2019                    Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633

*Counsel for Digital Justice Foundation*

24

## CERTIFICATE OF COMPLIANCE

This Petition contains **3896** words, excluding the portions exempted by court rules.

This Petition was prepared in Microsoft Word using Times New Roman 14-point font.

Date: October 31, 2019                    Respectfully submitted,

                                          */s/ Andrew Grimm*
                                          Andrew Grimm
                                          15287 Pepperwood Drive
                                          Omaha, Nebraska 68154
                                          (531) 210-2381
                                          andrew@digitaljusticefoundation.org

**ADDENDUM**

## ADDENDUM TABLE OF CONTENTS

**Page**

Excerpt of Panel Opinion (Oct. 1, 2019) ............................................................. A1

Certificate of Parties and *Amici* ....................................................................... A7

Rule 26.1 Corporate Disclosure Statement ......................................................... A11

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 1, 2019            Decided October 1, 2019

No. 18-1051

MOZILLA CORPORATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

CITY AND COUNTY OF SAN FRANCISCO, ET AL.,
INTERVENORS

———

Consolidated with 18-1052, 18-1053, 18-1054, 18-1055,
18-1056, 18-1061, 18-1062, 18-1064, 18-1065, 18-1066,
18-1067, 18-1068, 18-1088, 18-1089, 18-1105

———

On Petitions for Review of an Order of
the Federal Communications Commission

———

*Pantelis Michalopoulos* and *Kevin Kendrick Russell*
argued the causes for non-government petitioners. With them
on the joint briefs were *Cynthia L. Taub*, *Markham C.
Erickson*, *Michael A. Cheah*, *Brian M. Willen*, *Donald J.
Evans*, *Sarah J. Morris*, *Matthew F. Wood*, *Colleen Boothby*,
*James N. Horwood*, *Tillman L. Lay*, *Jeffrey M. Bayne*,

A000001

68

## IV.   Section 257 and the 2018 Order's Transparency Requirements

In its 2018 Order, the Commission retained a "transparency rule," which provided that "[a]ny person providing broadband Internet access service shall publicly disclose accurate information regarding the network management practices, performance, and commercial terms of its broadband Internet access services sufficient to enable consumers to make informed choices * * * ."  *2018 Order* ¶ 215.  Petitioners challenge the Commission's legal authority to issue a transparency rule under 47 U.S.C. § 257.  Instead, Petitioners argue that the Commission should have adopted the rule under Section 706 of the Telecommunications Act.  We disagree.

We first dispense with the Commission's contention that Petitioners Mozilla and Internet Association ("IA") do not have standing to assert this challenge because they do not suffer injury.  The Commission notes that Petitioners fail to identify any injuries that flow from the transparency rule itself but rather observe that the rule derivatively supports other rules that they find injurious.  Without alleging harm specific to the transparency rule, the Commission contends, Petitioners lack standing.  This understanding of injury is flawed.  Petitioners allege concrete injury from the Commission's Order repealing Internet conduct rules.   When a party alleges concrete injury from promulgation of an agency rule, it has standing to challenge essential components of that rule, invoked by the agency to justify the ultimate action, even if they are not directly linked to Petitioners' injuries; if Petitioners' objections carry the day, the rule will be struck down and their injury redressed.  *See Sierra Club v. FERC*, 867 F.3d 1357, 1366–1367 (D.C. Cir. 2017); *see also WildEarth Guardians v. Jewell*, 738 F.3d 298, 304–308 (D.C. Cir. 2013).   Because it is

69

undisputed that the transparency rule is an essential component of the 2018 Order, Petitioners have standing to object to any deficiency with the transparency rule. *See Sierra Club*, 867 F.3d at 1366–1367. The deficiency need not be tied to the Petitioners' specific injuries. Accordingly, we find that Petitioners suffer injury for the purpose of establishing standing.

Nonetheless, the Commission's reliance on 47 U.S.C. § 257 to issue the transparency rule was proper. Section 257(a) of the Communications Act required the FCC, within 15 months after enactment of the 1996 Act, to "complete a proceeding for the purpose of identifying and eliminating, by regulations pursuant to its authority under this chapter (other than this section), market entry barriers for entrepreneurs and other small businesses in the provision and ownership of telecommunications services and information services." 47 U.S.C. § 257(a). Section 257(c) directed the Commission, "triennially thereafter, to report to Congress on such marketplace barriers and how they have been addressed by regulation or could be addressed by recommended statutory changes." *2018 Order* ¶ 232 (citing 47 U.S.C. § 257(c)). The Commission observed that "section 257 does not specify precisely how [they] should obtain and analyze information for purposes of its reports to Congress," and thus "construe[d] the statutory mandate to 'identify' the presence of market barriers as including within it direct authority to collect evidence to prove that such barriers exist." *2018 Order* ¶ 232 n.847. We find that this interpretation of Section 257(a) is permissible. "The Commission, however, interpreted the statute to require a rulemaking based on authority other than section 257 itself only for rules intended to eliminate market barriers rather than rules meant to identify such barriers." Commission Br. 100. The relevant language in Section 257 is sufficiently ambiguous—Congress does not proscribe the means of

"identifying" market barriers.  The Commission permissibly read the clause to apply only to the elimination of market barriers.  In turn, we find that the Commission's reading easily satisfies review at *Chevron* Step Two, under which we defer to the agency's interpretation unless it is "arbitrary or capricious in substance, or manifestly contrary to the statute."  *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001).

While Petitioners correctly note that Section 257(c) was removed from the Communications Act before the 2018 Order became effective, *see* RAY BAUM'S Act of 2018, Pub. L. 115-141, § 402(f), 132 Stat. 1089 (2018), it was not altered in any material respect for purposes of the Commission's authority in this regard.  The 2018 legislation that amended the Act introduced a biennial reporting requirement quite similar to the triennial reporting requirement contained in the former Section 257(c).  *See* Pub. L. No. 115-141, Div. P, §§ 401, 402(f), 132 Stat. at 1087-1089 (codifying a reporting requirement at 47 U.S.C. § 163).  Indeed, Congress emphasized that "[n]othing in this title or the amendments made by this title shall be construed to expand or contract the authority of the Commission."  Pub. L. No. 115-141, Div. P, § 403, 132 Stat. at 1090.

We also reject Petitioners' contention that they did not have adequate notice of the statutory authority upon which the Commission relied in imposing the transparency rule.  This Court has previously recognized Section 257 as a possible source of authority for such rules.  *See, e.g.*, *Comcast Corp. v. FCC*, 600 F.3d 642, 659 (D.C. Cir. 2010) ("We readily accept that certain assertions of Commission authority could be reasonably ancillary to the Commission's statutory responsibility to issue a report to Congress.  For example, the Commission might impose disclosure requirements on regulated entities in order to gather data needed for such a

71

report." (quotations omitted)); *see also Verizon*, 740 F.3d at 668 n.9 (Silberman, J., concurring in part and dissenting in part). In fact, in response to the Notice of Proposed Rulemaking's ("NPRM's") explicit solicitation of comment on its legal authority to adopt rules if the Commission reclassified broadband as an information service, several commenters identified Section 257 as a possible source of authority for a transparency rule. *See 2018 Order* ¶ 232 n.843; *see also* NPRM ¶ 103 ("[W]e seek comment on *any* other sources of independent legal authority." (emphasis added)). Thus, we find Petitioners' notice argument to be without merit.

Intervenor Digital Justice Foundation argues that while the Commission has authority to maintain a transparency rule, it should have retained aspects of the rule contained in a 2010 Order issued by the Commission. *See Preserving the Open Internet*, 25 FCC Rcd. 17905 (2010) ("*2010 Order*"). At the outset, we reject the Commission's assertion that this argument is not properly before us. Digital Justice has simply raised a new argument in support of claims the Petitioners have presented. The argument is thus a far cry from the sort of intervenor's claim with "absolutely no substantive connection with the issues raised by the petition for review," which we have rejected in the past. *See Synovus Fin. Corp. v. Board of Governors of Fed. Reserve Sys.*, 952 F.2d 426, 434 (D.C. Cir. 1991). We also find no merit in the Commission's argument that Digital Justice was required to seek reconsideration before raising this garden-variety arbitrary-and-capricious challenge. A petition for reconsideration is required for "only those issues upon which the Commission has been afforded no opportunity to pass." *AT&T Corp. v. FCC*, 394 F.3d 933, 938 n.1 (D.C. Cir. 2005) (internal quotation marks omitted). That rule always allows courts to consider whether the Commission "relied on faulty logic," *id.*, because "[t]he Commission necessarily had an opportunity to pass upon the validity of the

72

rationale that it actually put forth," *MCI Telecomm. Corp. v. FCC*, 10 F.3d 842, 845 (D.C. Cir. 1993).

Turning to the merits, Digital Justice charges that it was arbitrary and capricious for the Commission to eliminate aspects of the former transparency rule without considering the impact on entrepreneurs and small businesses — as identified in Section 257(a)—or providing a reasoned explanation for modifying the rule. We disagree. The Commission explained that the "additional obligations [of the former transparency rule] [did] not benefit consumers, entrepreneurs, or the Commission sufficiently to outweigh the burdens imposed on [broadband providers]." *See 2018 Order* ¶ 210. We are also unpersuaded by Digital Justice's claim that the Commission needed to analyze the interest of entrepreneurs and other small businesses in the specific context of repealing portions of the transparency rule. Section 257(a) simply requires the FCC to consider "market entry barriers for entrepreneurs and other small businesses." 47 U.S.C. §257(a). The disclosure requirements in the transparency rule are in service of this obligation. The Commission found that the elements of the transparency rule in the 2018 Order will "keep entrepreneurs and other small businesses effectively informed of [broadband provider] practices so that they can develop, market, and maintain Internet offerings." *See 2018 Order* ¶ 218. In fact, the Order takes care to describe the specific requirements of the rule to "ensure that consumers, entrepreneurs, and other small businesses receive sufficient information to make [the] rule effective." *Id.*; *see also id.* ¶¶218–223. Digital Justice's challenges cannot prevail under our particularly deferential arbitrary-and-capricious review.

In sum, we uphold the transparency rule as authorized by 47 U.S.C. § 257.

## CERTIFICATE OF PARTIES AND *AMICI*

The <u>petitioners</u> are:

> Mozilla Corp.;
> Vimeo, Inc.;
> Public Knowledge;
> Open Technology Institute;
> the States of New York, California, Connecticut, Delaware, Hawaii, Illinois, Iowa, Maine, Maryland, Minnesota, Mississippi, New Jersey, New Mexico, North Carolina, Oregon, Rhode Island, Vermont, and Washington;
> the Commonwealths of Kentucky, Massachusetts, Pennsylvania, and Virginia;
> the District of Columbia;
> the National Hispanic
> Media Coalition;
> NTCH, Inc.;
> the Benton Foundation;
> Free Press;
> the Coalition for Internet Openness;
> Etsy, Inc.;
> the Ad Hoc Telecom Users Committee;
> the Center for Democracy and Technology;
> the County of Santa Clara and the Santa Clara County Central Fire Protection District;
> the California Public Utilities Commission; and
> INCOMPAS.

The <u>respondents</u> are:

> the Federal Communications Commission; and
> the United States of America.

The <u>intervenors</u> are:

> the Internet Association;
> the Computer & Communications Industry Association;
> the Entertainment Software Association;
> Writers Guild of America, West, Inc.;

**A7**

the City and County of San Francisco;
the National Association of Regulatory Utility Commissioners; and
the National Association of State Utility Consumer Advocates;
CTIA—The Wireless Association;
NCTA—The Internet & Television Association;
USTelecom—The Broadband Association;
the American Cable Association;
the Wireless Internet Service Providers Association;
Leonid Goldstein; and
the Digital Justice Foundation.

The *amici* are:

American Council on Education;
Accreditation Council for Pharmacy Education;
American Association of Colleges for Teacher Education;
American Association of Colleges of Nursing;
American Association of Community Colleges;
American Association of State Colleges and Universities;
American Library Association;
Association of American Universities;
Association of College & Research Libraries;
Association of Jesuit Colleges and Universities;
Association of Public and Land-grant Universities;
Association of Research Libraries;
College and University Professional Association for Human Resources;
Consortium of Universities of the Washington Metropolitan Area;
EDUCAUSE;
Middle States Commission on Higher Education;
National Association for Equal Opportunity in Higher Education;
National Association of Independent Colleges and Universities;
Student Affairs Administrators in Higher Education;
Thurgood Marshall College Fund;
Center for Media Justice;
Color of Change;
Common Cause;
Greenlining Institute;
18 Million Rising;
Media Alliance;
Media Mobilizing Project;

**A8**

Professors Michael Burstein, James Ming Chen, Rob Frieden, Barbara van
    Schewick, Catherine Sandoval, Allen Hammond, IV, Carolyn Byerly,
    Anthony Chase, Scott Jordan, and Jon Peha;
Consumers Union;
eBay Inc.;
Electronic Frontier Foundation;
Engine Advocacy;
Twilio Inc.;
William Cunningham;
the Cities of New York, NY, Alexandria, VA, Baltimore, MD, Boston, MA,
    Buffalo, NY, Chicago, IL, Gary, IN, Houston, TX, Ithaca, NY, Los
    Angeles, CA, Lincoln, NE, Madison, WI, Newark, NJ, Oakland, CA,
    San Jose, CA, Schenectady, NY, Seattle, WA, Somerville, MA,
    Springfield, MA, Syracuse, NY, Tallahassee, FL, and Wilton Manors,
    FL; Cook County, IL;
the Town of Princeton, NJ;
the Mayor of Washington, DC;
the Mayor and City Council of Portland, OR;
International Municipal Lawyers Association;
California State Association of Counties;
United States Senators Edward Markey, Charles Schumer, Ron Wyden,
    Maria Cantwell, Tammy Baldwin, Brian Schatz, Richard Blumenthal,
    Tammy Duckworth, Cory Booker, Sheldon Whitehouse, Angus King,
    Kirsten Gillibrand, Benjamin Cardin, Dianne Feinstein, Jack Reed,
    Kamala Harris, Tina Smith, Patrick Leahy, Margaret Hassan, Jeanne
    Shaheen, Gary Peters, Jeffrey Merkley, Patty Murray, Chris Van
    Hollen, Bernard Sanders, Sherrod Brown, and Elizabeth Warren;
Members of the House of Representatives Anna Eshoo, Nancy Pelosi, Frank
    Pallone, Michael Doyle, Janice Schakowsky, Peter Welch, Zoe
    Lofgren, Mark Takano Eleanor Holmes Norton, Ro Khanna, Jose
    Serrano, Adam Smith, Jared Huffman, Peter DeFazio, Maxine Waters,
    Pramila Jayapal, Jerry McNerney, Jamie Raskin, Tulsi Gabbard,
    Hakeem Jeffries, Mike Thompson, John Lewis, Yvette Clarke, Charlie
    Crist, Adriano Espaillat, James McGovern, Mark Pocan, Jacki Speier,
    Keith Ellison, Joe Courtney, Daniel Kildee, Betty McCollum, Stephen
    Lynch, David Price, Marcy Kaptur, Jimmy Panetta, Barbara Lee,
    Donald Beyer, Jr., Nydia Velazquez, Chellie Pingree, Sean Maloney,
    Lloyd Doggett, Raul Grijalva, Joseph Crowley, Jacky Rosen, Earl
    Blumenauer, Alan Lowenthal, Andre Carson, Joseph Kennedy III,
    Steve Cohen, Lucille Roybal-Allard, Albio Sires, Mark DeSaulnier,

**A9**

Rosa DeLauro, Gregorio Sablan Bill Pascrell, Jr., Suzanne Bonamici, Diana DeGette, Kathy Castor, John Yarmuth, Jerrold Nadler, Grace Meng, Doris Matsui, John Larson, Carolyn Maloney, Sheila Jackson Lee, Danny Davis, John Sarbanes, Richard Nolan, Seth Moulton, Michelle Grisham, Colleen Hanabusa, Carol Shea-Porter, Katherine Clark, William Keating, and David Cicilline;

Phoenix Center for Advanced Legal and Economic Policy Studies;
International Center for Law and Economics;
Geoffrey A. Manne;
Gus Hurwitz;
Roslyn Layton;
Multicultural Media, Telecom and Internet Council;
National Association of Manufacturers;
Chamber of Commerce of the United States of America;
Business Roundtable
Telecommunications Industry Association;
Technology Policy Institute;
Richard Bennett;
John Day;
Tom Evslin;
Shane Tews;
Martin Geddes;
Information Technology and Innovation Foundation;
Washington Legal Foundation;
Southeastern Legal Foundation, Inc.;
States of Arkansas, Nebraska, Texas;
TechFreedom;
Georgetown Center for Business and Public Policy;
Kevin Caves
Gerald R. Faulhaber;
Harold Furchtgott-Roth;
Robert Hahn;
Jeffrey T. Macher;
Michael Mandel;
John Mayo;
James E. Prieger;
Hal J. Singer;
Tech Knowledge.

**A10**

## CORPORATE DISCLOSURE STATEMENT

The Digital Justice Foundation ("DJF") is a 501(c)(3)-registered, non-profit private operating foundation with a mission to advocate for and educate about issues of digital justice.  The DJF promotes and protects individual rights in the digital space with a particular focus on being a voice for underrepresented users, artists, creators and innovators.

The DJF has no parent corporation and no publicly held corporation has any ownership stake in it.  The DJF issues no shares and no publicly held corporation pays 10% of more of its dues or exercises 10% or more of its voting power.

The DJF has accepted no donations and has received no cy-pres awards from any petitioners, respondents, or other intervenors in this case.  Nor have any of its lawyers been funded by or received grants from any petitioner, respondent, *amici*, or other intervenor.

**A11**

## CERTIFICATE OF SERVICE

I have electronically filed the foregoing PETITION FOR PANEL REHEARING AND REHEARING *EN BANC* with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: October 31, 2019        Respectfully submitted,

*/s/ Andrew Grimm*
Andrew Grimm
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org